**NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THOMAS GAGE, | : | |
| | : | Civil Action No. 11-1501 (FLW) |
| Plaintiff, | : | |
| | : | OPINION |
| v. | : | |
| | : | |
| WARREN TOWNSHIP COMMITTEE and PLANNING BOARD MEMBERS, et al., | : | |
| | : | |
| Defendants. | : | |

**WOLFSON, District Judge**:

This action arises out of Warren Township Planning Board's (the "Board") approval of an amended preliminary major subdivision and the final subdivision of a development project by defendant Sleepy Hollow of Warren, LLC ("Sleepy Hollow"). Initially, pro se Plaintiff Thomas Gage ("Plaintiff"), in late 2008, filed a state court complaint in Somerset County ("Somerset Action"), essentially alleging that the Board inappropriately approved the Sleepy Hollow development. The state court judge dismissed Plaintiff's action. Thereafter, Plaintiff filed another state court action in Somerset County and that court transferred the case to Morris County ("Morris Action"). In that second action, Plaintiff challenged certain issues already litigated in the Somerset Action. As a result, the Morris Action was dismissed primarily pursuant to the doctrines of res judicata and claim preclusion. Unsuccessful in state court, Plaintiff brought the present suit in this Court. All defendants in this action, the Board, Warren Township Committee, State of New Jersey Judiciary Offices, Marianne Cammarota, Prout &

Cammarota, LLP, Sleepy Hollow, Dorothy D'Angelo and Kevin Page (collectively, "Defendants"), move separately to dismiss the Complaint on various grounds, including the Rooker-Feldman doctrine and other preclusion doctrines. For the reasons that follow, Defendants' motions are **GRANTED**.

## BACKGROUND

For the purposes of these motions, the Court takes the facts as alleged in the Complaint as true and recounts only the relevant facts. Plaintiff has owned a parcel of land in Warren, New Jersey since 1997. Compl., ¶16. Plaintiff alleges that prior to his purchase of the property, the Board had approved, albeit improperly, the extension of a road through Plaintiff's property. Id. at ¶ 54. Nevertheless, Plaintiff, expecting the road to be built, attempted to subdivide his property into three separate parcels; however, that request was denied. Id. at ¶ 17.

Subsequently, in 2004, a neighboring property owner, Sleepy Hollow, made a request for the subdivision of its property to build twenty single-family residences. Id. at ¶¶ 48-52. The request was preliminarily granted by the Board in September 2005. Plaintiff alleges that the site plan approval was arbitrary, capricious, unreasonable, and an abuse of discretion. Id. at ¶¶ 52-54. Because Plaintiff is a neighboring property owner, he claims that as a result of the land development, his property suffered a loss of value. Id. at ¶ 54. In that connection, Plaintiff first filed the Somerset Action in lieu of prerogative writ in New Jersey Superior Court in November 2005. That matter was dismissed on August 23, 2006. In his decision, the state court judge specifically found that the Board's preliminarily approval of the site plan was not arbitrary, capricious, unreasonable, and an abuse of discretion.

Thereafter, Somerset County declined to allow a secondary access road contemplated by

the first site plan to moderate traffic congestion. See Compl., Exh H, Appellate Court's decision dated October 18, 2010, p. 3. Consequently, Sleepy Hollow devised an alternative plan and submitted that amended plan to the Board for approval. Id. In September 2008, the Board also approved the amended plan. Id. On September 9, 2008, Plaintiff filed the Morris Action lawsuit against Sleepy Hollow and the Board. In that second state court action, Plaintiff again challenged the Board's initial approval of Sleepy Hollow's preliminary site plan, in addition to the Board's subsequent approval of the amended plan. Plaintiff also claimed, inter alia, that the Board failed to make the necessary factual findings to grant the subdivision approval and variances. See Brennan Cert., Exh. B, State Court Opinion dated June 1, 2009. With respect to claims relating to the Board's first approval, the Honorable Fred H. Kumpf, J.S.C., found that those claims are precluded by the doctrines of res judicata, claim preclusion and entire controversy. Id. at p. 17. With respect to claims related to the Board's approval of the amended plan, Judge Kumpf held that the Board's approval was not arbitrary or capricious. As a result, the case was dismissed on June 1, 2009. Plaintiff appealed that decision and the decision was subsequently upheld by the appellate court. See Appellate Court's decision dated October 18, 2010.

    Unsatisfied with the state courts' decisions, Plaintiff brought claims based upon similar facts in this Court in 2010; however, on June 11, 2010, this Court dismissed that complaint sua sponte for failing to comply with pleading standards under Fed R. Civ. P. 8(a). On November 26, 2010, the Court's dismissal without prejudice was upheld by the Third Circuit. On March 16, 2011, Plaintiff filed this Complaint against various defendants for violating his constitutional rights as a result of the approvals of Sleep Hollow's site plans. Pending before the Court are five motions to dismiss Plaintiff's claims. The majority of Defendants move to dismiss Plaintiff's

claims based upon the Rooker-Feldman doctrine and other preclusion doctrines, and defendants Judge Kumpf and State of New Jersey Judiciary Offices ("Judiciary Defendants") move to dismiss based upon immunity grounds. The Court notes that it appears that the Judiciary Defendants are the only new defendants in this Complaint who were not named as defendants in Plaintiff's previous state court actions.

## DISCUSSION

### I.     Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 555 U.S. at 555).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948-49 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). Moreover, in deciding a motion to dismiss, the court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of plaintiff's claim. Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, No. 09-4468, 2010 WL 4840093, at *8 (3d Cir. Nov. 29, 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." Id. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." Id. at *7 (quoting Ashcroft, 129 S.Ct. at 1953).

**II.     Legal Concepts**

Because the Court finds that the majority of Plaintiff's claims are barred by the doctrines of Rooker-Feldman, res judicata and/or entire controversy, the Court will delineate those concepts below.

### A. Rooker-Feldman Doctrine

Pursuant to the Rooker-Feldman doctrine, federal district courts lack subject matter jurisdiction to review and reverse state court judgments. In re Knapper, 407 F.3d 573, 580 (3rd Cir. 2005). "[A] claim is barred by Rooker-Feldman under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." Id. "[A] federal claim is 'inextricably intertwined' with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." In re Madera, 586 F.3d 228, 232 (3d Cir. 2009) (quoting Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004)). Where, on the other hand, the federal plaintiff presents "some independent claim, albeit one that denies a legal conclusion that a state court has reached," the doctrine does not apply. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 292 (2005) quoted in Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547-48 (3d Cir. 2006)). In such an instance, jurisdiction is confirmed and the court should then consider "whether the defendant prevails under principles of preclusion." Exxon Mobile, 544 U.S. at 292 quoted in Turner, 449 F.3d at 548.

In addition, Rooker-Feldman applies only to "state court losers . . . complaining of

injuries caused by [a] state-court judgment[ ] <u>rendered before the district court proceedings commenced</u> and inviting district court review and rejection of [that] judgment." <u>Gary v. Braddock Cemetery</u>, 517 F.3d 195, 201 (3d Cir. 2008) (quoting <u>Exxon</u>, 544 U.S. at 284) (emphasis added). If no judgment had been reached in the state court action at the time the federal complaint was filed, there can be no "loser."[1] Whether a judgment has been rendered in a state foreclosure action is a question of state law. <u>See</u> <u>Randall v. Bank One</u>, 358 B.R. 145, 159 n.9 (Bankr. E.D.Pa. 2006) (in reaching its <u>Rooker-Feldman</u> determination, applying Pennsylvania law to determine nature of foreclosure judgment). In addition, it is the date of the complaint that determines, for <u>Rooker-Feldman</u> purposes, whether a judgment had been rendered. <u>See</u> Gary, 517 F.3d at 201.

    **B.**    <u>**Res Judicata**</u>

<u>Res judicata</u> is an affirmative defense. Such a defense is grounds for a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). "Res judicata encompasses two preclusion concepts - issue preclusion, which forecloses litigation of a litigated and decided matter (often referred to as direct or collateral estoppel), and claim preclusion, which disallows litigation of a matter that has never been litigated but which should have been presented in an earlier suit." <u>Bierley v. Dombrowski</u>, 309 Fed. Appx. 594, 596-97 (3d Cir. 2009).

Collateral estoppel prevents parties or their privies from re-litigating an issue if a court possessing personal and subject matter jurisdiction has already delivered a valid, final judgment

---

[1] Hence, the <u>Rooker-Feldman</u> doctrine "divests a federal district court of jurisdiction if the plaintiff's claim was either (1) <u>actually litigated</u> in state court or (2) if the claim is inextricably intertwined with the <u>prior</u> state court ruling." <u>Lui v. Commission, Adult Entertainment, De</u>, 369 F.3d 319, 328 n.12 (3d Cir. 2004) (citing <u>Desi's Pizza, Inc. v. City of Wilkes-Barre</u>, 321 F.3d 411, 419 (3d Cir. 2003) (emphasis added)).

7

on the merits. Witkowski v. Welch, 173 F.3d 192, 198-99 (3d Cir. 1999). The doctrine applies if four requirements are met: "1) the issue sought to be precluded [is] the same as that involved in the prior action; 2) that issue [was] actually litigated; 3) it [was] determined by a final and valid judgment; and 4) the determination [was] essential to the prior judgment." In re G-I Holdings Inc., No. 02-3082, 2003 U.S. Dist. LEXIS 16317, at *6  (D.N.J. Aug. 8, 2003)(citations omitted). The purpose of the collateral estoppel doctrine is to promote judicial consistency, encourage reliance on court decisions, and protect defendants from being forced to repeatedly relitigate the same issues in multiple lawsuits. Allen v. McCurry, 449 U.S. 90, 94 (1980).

Res judicata, or claim preclusion, is a broader doctrine than collateral estoppel. It applies not only to claims brought in a previous lawsuit, but also to claims which could have been brought in that suit. The doctrine attaches if there has been (1) a final judgment on the merits in a previous lawsuit involving (2) the same parties or their privies and (3) a subsequent action based on the same cause of action. Mullarkey v. Tamboer, 536 F.3d 215, 225 (3d Cir. 2008)(citations omitted).  Under New Jersey law, "[a] dismissal with prejudice 'constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial.'" Feinsod v. Noon, 261 N.J. Super. 82, 84 (App. Div. 1992) (citations omitted).  Indeed, if a res judicata "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Rycoline Prods. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997).

  C. **Entire Controversy Doctrine**

The entire controversy doctrine is New Jersey's own, distinctive application of res judicata principles. It "embodies the principle that the adjudication of a legal controversy should

occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Kozyra v. Allen, 973 F.2d 1110, 1111 (3d Cir. 1992)(citations omitted). The doctrine is meant to encourage a final, comprehensive adjudication of a legal controversy, provide fairness to all involved parties (including prospective parties), and preserve judicial resources by avoiding fragmented litigation. Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 322 (1995). "It is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation." Id. at 323. "While the wellspring of res judicata or collateral estoppel is the notion of finality of a court's adjudication, the entire controversy doctrine is designed to prevent the fragmentation of litigation and applies even when the first case adjudicates an issue different from the second." Fioriglio v. City of Atlantic City, 963 F. Supp. 415, 420 (D.N.J. 1997). New Jersey Courts apply the entire controversy doctrine as a bar to a subsequent suit when there is some duplication of proof involved. "For instance…forcing the two claims to be brought at the same time 'would have resulted in a more comprehensive determination of the underlying legal controversy.'" Fields v. Thompson Printing Co., 363 F.3d 259, 266 (3d Cir. 2004)(citations and quotations omitted). The Full Faith and Credit Act, 28 U.S.C. § 1738, obliges federal courts to apply New Jersey's Entire Controversy Doctrine when hearing federal causes of action. Rycoline Prods., 109 F.3d at 887; Dowdell v. University of Med. & Dentistry, 94 F. Supp. 2d 527, 535 (D.N.J. 2000).

  There are, however, exceptions to the doctrine's application. "The doctrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original

action." Mystic Isle Dev. Corp., 142 N.J. at 323. The Third Circuit has also held that "the entire controversy doctrine does not preclude the initiation of a second action before the first action has been concluded." Rycoline, 109 F.3d at 890. The entire controversy doctrine is codified in New Jersey Court Rule 4:30A.

**III.     Analysis**[2]

In the instant Complaint, Plaintiff asserts seven counts against Defendants. In Count I, Plaintiff alleges that because of the negligent actions of the Board and Township Committee members, Plaintiff suffered various emotional damages, "such as loss of control over [Plaintiff's] lives, marriage distress, depression, and insecurity of [Plaintiff's] future." Compl., ¶ 82. Plaintiff requests "monetary restitution for the inflicted 'Torts' in the amount of $10,000,000.00." Id. at ¶ 83. With respect to the allegations contained in Count I, Plaintiff continues to make the same series of allegations against defendants Warren Township Committee and Warren Township Planning Board that were made previously in state court. Indeed, this cause of action was actually litigated in the two prior state court actions wherein Plaintiff's claims relating to the Board's approvals of the Sleepy Hollow development site plans, both preliminary and final, were dismissed with prejudice, and Plaintiff's appeal of the Morris Action was denied by the appellate court. These litigations resulted in a finding that the Board and the Township Committee did not engage in any unlawful conduct and that their approvals of the Sleepy Hollow site plans were not arbitrary or capricious. Clearly, Count I is barred by the doctrine of res judicata. In addition, to the extent that Plaintiff is bringing a new claim against

---

It is critical to note that while Plaintiff has filed opposition papers to Defendants' motions, Plaintiff does not respond substantively to the legal arguments relating to the preclusion doctrines, i.e., res judicata, collateral estoppel and entire controversy.

the Board and Township Committee by way of his new theory of damages, his claim is precluded by the entire controversy doctrine - this type of relief should have been raised in the previous state court actions.

In Count II, Plaintiff requests the Court to void the decisions rendered by New Jersey Superior Court Judge Fred H. Kumpf because Judge Kumpf has denied Plaintiff his constitutional "'rights' of Amendment XIV and Amendment VII and has been in violation of Article VI, Paragraph-3, Title 18 U.S.C. § 4, Title 18 U.S.C. § 1505, Title 18 U.S.C. § 1510 and TREASON." Id. at ¶ 85 (underline deleted). Similarly, in Count III, Plaintiff requests the Court to void the state Appellate Court's decision. Id. at ¶ 87. To the extent these Counts raise new claims against the Judiciary Defendants unrelated to the state court actions, the Court will address those claims infra. However, to the extent that Plaintiff seeks to invalidate the state court judgments in this Count, that relief is expressly barred by the Rooker-Feldman doctrine. See Gary, 517 F.3d at 201.

In Count IV, Plaintiff requests "a compensation of $2,000.000.00 for [defendants] Marianne Cammarota['s] and Prout & Cammarota, L.L.P.'s contribution to the criminal actions that have inflicted on the Plaintiff . . . ." Id. at ¶ 90. Plaintiff alleges that Cammarota, as the Board's court reporter, altered and/or manipulated the testimony of certain witnesses during the Board's hearings concerning the development application of Sleepy Hollow. Indeed, this specific claim was already litigated in Plaintiff's Morris Action before Judge Kumpf wherein Judge Kumpf found that Plaintiff's allegations of alteration of certain transcripts relating to the Board's approval were without merit. Following Judge Kumpf's dismissal, Plaintiff filed a new complaint in Morris County Superior Court on June 17, 2009, again alleging that defendants

11

Cammarota and Prout & Cammarota altered certain transcripts. That case was dismissed by another state court judge on the ground of claim preclusion. See Brennan Cert., Exh D, State Court Order dated August 28, 2009. Clearly, Count IV has been litigated and re-litigated by Plaintiff in state court, and therefore, this claim is barred by the res judicata doctrine.

In Count V, Plaintiff requests that because of the unlawful conduct of the Board, "all the approvals rendered by the Warren Township authorities to the Defendants, Sleepy Hollow of Warren, LLC and its owner Mrs. Dorothy D'Angelo, to be regarded as nullities or voided." Id. at ¶ 93. In addition, Plaintiff alleges that Sleepy Hollow and Mrs. D'Angelo engaged in some unspecified corruption. In this Count, Plaintiff seeks damages in the amount of $10 million. Again, as the Court has found, any claims of unlawful conduct of the Board relating to the approvals of the Sleepy Hollow site plans have been dismissed as a result of two state court litigations and an appeal. To the extent that Plaintiff asks the Court to invalidate the Board's approvals of the Sleepy Hollow site plans, such relief is barred by the Rooker-Feldman doctrine.

To the extent that Plaintiff is seeking monetary damages against Sleepy Hollow and Mrs. D'Angelo for ceratin unspecified corruption, that claim is barred by the doctrine of res judicata. It appears that the allegedly unlawful conduct of Sleepy Hollow and Mrs. D'Angelo to which Plaintiff refers in his Complaint has already been litigated. Indeed, in the Appellate Division's opinion, the court affirmed the trial court's rejection of issues Plaintiff raised relating to Sleepy Hollow: (1) two of the Board members and Sleepy Hollow's engineering expert have disqualifying conflicts of interest; (2) Sleepy Hollow failed to give adequate notice of its amended plan to neighboring property owners; and (3) the estate of a now-deceased Sleepy Hollow Partner failed to disclose a ten percent ownership interest in the project. It appears that

Plaintiff is raising the identical issues in this Complaint, to those which have already been litigated. See Compl., ¶ 48-66. Plaintiff has not identified any other issues in this Complaint that would give rise to any new claims against Sleepy Hollow and/or Mrs. D'Angelo that have not been previously adjudicated. Accordingly, Count V is precluded by the doctrines of res judicata and collateral estoppel.

In Count VI, Plaintiff alleges that defendant Kevin Page, "who is the engineer that served . . . the Sleepy Hollow [development], in this case, acted negligently by misconduct against his own state license requirements." Id. at ¶ 68. Plaintiff further alleges that Mr. Page's "negligent actions contributed to the criminal action inflicted on the Plaintiff and his family." Id. at ¶ 96. While it is not clear from Plaintiff's allegations the "negligent conduct" to which he refers, it appears in his earlier state court proceedings, Plaintiff alleged that Mr. Page lied in his deposition relating to his testimony regarding Sleepy Hollow's site plans. Again, these issues relating to the actions of Mr. Page have been disposed of by the state court judgments, wherein various judges found that the issues regarding Mr. Page's conduct were without merit. See State Court Opinion dated June 1, 2009, pp. 6. 17. Therefore, this claim is precluded by collateral estoppel. Moreover, to the extent that Plaintiff is attempting to bring additional claims against Mr. Page based upon a new theory of liability, Plaintiff has not sufficiently alleged that theory in this Complaint, and further, it is precluded by the entire controversy doctrine - Plaintiff had the opportunity to raise those claims in the already-closed state court litigations.

Finally, in Count VII, pursuant to 28 U.S. C. § 1361, Plaintiff requests the Court to compel the United States Attorney General to take action against defendants in this case for various corrupt conduct. Id. at ¶¶ 99-103. First, Plaintiff fails to set forth any basis for the

Attorney General of the United States to investigate his claims or to "render justice." Second, because Plaintiff's claims are being dismissed in their entirety for the reasons stated herein and because Plaintiff has had ample judicial resources dedicated to reviewing his claims, Count VII is also dismissed.

As a final note, during the pendency of these motions, Plaintiff filed an "Amendment Motion Requests with Stay; for a Federal Investigation and an Immediate Order to be Executed against the Defts' action in this matter." See Docket No. 23. That motion is denied because only the Executive branch of the government has exclusive authority and absolute discretion to decide whether to prosecute a case. See United States v. Nixon, 418 U.S. 683 (1974); In re Sealed Case, 838 F.2d 476, 488 (D.D.C. 1988). This Court, as the judicial arm of the government, has no power or authority to issue the order to investigate that Plaintiff seeks in his motion.

## IV.   Judiciary Defendants

With respect to the claims asserted against the Judiciary Defendants in Count II, Plaintiff clarified his claim in his opposition as follows:

> [T]he Plaintiff is not seeking to overturn any [of] the state court judgments or to appeal an ongoing state court proceeding. The Plaintiff's claim is a new action in Federal District Court . . . against the State Judiciary Officers' misconduct that has violated the Contract Clause of the Constitution and the Due Process and Equal Protection Clauses of the 14th Amendment in the Plaintiff's case.

Plaintiff's Opp., p. 30. In that regard, although Plaintiff has couched his Complaint against the "State of New Jersey Judiciary Offices," his claims appear to be against the judges who issued their various orders. However, the Court concludes that those claims are dismissed because the Judiciary Defendants are entitled to absolute judicial immunity.

As a general rule, "judges are immune from liability for damages for acts committed within their judicial jurisdiction." Murawski v. Baldwin, 209 Fed. Appx. 99, 100 (3d Cir. 2006) (citing Pierson v. Ray, 386 U.S. 547, 554 (1967)). In that regard, "[j]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mireless v. Waco, 502 U.S. 9, 11 (1991). In addition, the immunity applies as a complete shield to all suits regardless of the claims alleged, see Imble v. Pachtman, 424 U.S. 409 (1976), and immunity is available even if a judge acts erroneously, corruptly or in excess of his jurisdiction. Id. at 9-10. There are two recognized exceptions to this immunity from money damages: (1) where the judge acts in a non-judicial capacity; and (2) where the judge acts in complete absence of all jurisdiction. Mireless, 502 U.S. at 11-12.

Here, it is clear that Plaintiff alleges that his injuries were caused by the Judiciary Defendants issuing orders in their role as judges for the State of New Jersey, and that the exceptions to this type of immunity do not apply in this case. As such, the Judiciary Defendants are entitled to judicial immunity, see, e.g., Murawski, 209 Fed. Appx. at 100, and all claims against them are dismissed.

## CONCLUSION

Based on the foregoing reasons, the Court grants all Defendants' motions to dismiss in their entirety.

DATED: November 29, 2011                                          /s/ Freda L. Wolfson
                                                                  Freda L. Wolfson, U.S.D.J.